UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                    :
In re                                               :   Chapter 11
                                                    :
YEHUD-MONOSSON USA, INC.,                            :   Case No. 11-11278 (ALG)
                                                    :
                                  Debtor.            :
                                                    :
-----------------------------------------------------------------x

**MOTION OF THE UNITED STATES TRUSTEE, PURSUANT TO
28 U.S.C. § 1412, TO TRANSFER THIS CHAPTER 11 CASE TO THE
BANKRUPTCY COURT FOR THE DISTRICT OF MINNESOTA OR,
IN THE ALTERNATIVE, TO HAVE THE CASE CONVERTED
TO CHAPTER 7 OR DISMISSED WITH PREJUDICE**

TO:     HONORABLE ALLAN L. GROPPER,
        UNITED STATES BANKRUPTCY JUDGE:

        Tracy Hope Davis, the United States Trustee for Region 2 (the "United States

Trustee"), respectfully submits this motion (the "Motion") seeking an Order from the

Court (i) transferring this Chapter 11 case to the United States Bankruptcy Court for the

District of Minnesota (the "Minnesota Bankruptcy Court") or (ii) in the alternative,

converting the case to Chapter 7, or dismissing it with prejudice and imposing a two-year

bar on re-filing.  In support thereof, the United States Trustee represents and states:

                            **PRELIMINARY STATEMENT**

        This case involves a "company's" two-year attempt to stave off its secured

creditors' foreclosures on property located in Minnesota, and to circumvent prior

dismissal orders, including orders entered with prejudice, entered by other bankruptcy

courts.  The Debtor (as defined below) is a newly-formed entity that incorporated in the

State of New York in December of 2010.  As the filings in this case reflect, the Debtor

owns real estate in Minnesota, all its creditors are located in Minnesota or the mid-west,

and, aside from a "corporate" address in Manhattan, it has no other connections to New

York.  Moreover, after its fourth repeat bankruptcy filing, and after the Minnesota

bankruptcy court dismissed its case with prejudice for one year, a predecessor debtor –

Midwest Oil (as defined below) – recently merged itself and its real property into the

Debtor.  Accordingly, the Debtor clearly is engaged in forum shopping and using the

bankruptcy process as a transparently continuous attempt to stop a sheriff's sale on its

property, and to circumvent the prior dismissal orders of other bankruptcy courts.

Venue does not appear to lie properly in this district, as the facts show that there

are minimal – if any – connections to New York.  This is the fifth successive bankruptcy

filing by an entity owning the Minnesota real estate at issue.  The fact that the Debtor is

now filing in New York as a newly-created entity -- and after a predecessor debtor barred

in Minnesota merged itself into the Debtor on the heels of an order dismissing that

debtor's fourth back-to-back bankruptcy case -- is a clear indication of the bad faith

underlying the current filing.  Given these volitional circumstances, and because the

Minnesota Bankruptcy Court is well versed in the ongoing scheme of the Debtor's

predecessor, venue should be transferred to the Minnesota Bankruptcy Court.  If,

however, this Court elects to retain jurisdiction over the Debtor, then the case should be

converted to Chapter 7 or dismissed with prejudice for a two-year period.

## BACKGROUND

*Prior Related Bankruptcy Cases*

1.      The history behind the debtor here, Yehud-Monosson USA, Inc., and its

related bankruptcy filings, as well as the events leading to this chapter 11 filing, begins

with the filing in March 2009, in Delaware, of the Chapter 11 case of Midwest Oil of

Minnesota, LLC ("Midwest Oil"), captioned as In re Midwest Oil of Minnesota, LLC,

Case No. 09-10676 (Bankr. D. Del.) (the "First Midwest Oil Bankruptcy Case"). The first Midwest Oil voluntary petition was signed by Naomi Isaacson as the company's Chief Executive Officer and was accompanied by, among other documents, a Certificate of Resolution authorizing the bankruptcy filing executed by the company's secretary, Darlene Sense. See First Midwest Oil Bankruptcy Case, ECF Docket No. 1. Moreover, the documents filed along with the first Midwest Oil voluntary petition indicated that Dr. R. C. Samanta Roy Institute for Science & Technology, Inc. ("SIST") was the sole shareholder (i.e., the parent) of Midwest Oil. See id.

2.      Several related entities, including SIST, also filed Chapter 11 bankruptcy petitions in the District of Delaware at the same time, and the Delaware Bankruptcy Court ultimately ordered joint administration of the cases by order dated on or about March 20, 2009.[1] See id, ECF Docket No. 8.

3.      Midwest Oil's Schedule A, filed in the First Midwest Oil Bankruptcy Case, reflected that the debtor owned real estate property at the following locations: (a) 2611 Bridge Avenue, Albert Lea, MN 56007; (b) 3355 Hadley Avenue, Oakdale, MN 55128; (c) 236 Grand Avenue, St. Paul, MN 55102; and (d) 365/367 Smith Avenue North, St. Paul, MN 55102 (collectively, the "Minnesota Properties"). See Midwest Oil Schedule A, SIST Docket, Case No. 09-10876, Docket No. 36.

4.      On or about September 22, 2009, the Delaware Bankruptcy Court dismissed all of the related cases (the "First Dismissal Order"). See First Midwest Oil Bankruptcy Case, ECF Docket No. 12. A copy of the First Dismissal Order is attached

---

[1]      The related entities that filed and their case numbers are: SIST, Case No. 09-10876; U.S. Acquisitions & Oil, Inc. ("USA&O"), Case No. 09-10875; Midwest Oil of Wisconsin, LLC, Case No. 09-10877; Midwest Oil of Shawano, LLC, Case No. 09-10879; Midwest Properties of Shawano, LLC, Case No. 09-10880; and Midwest Hotels & Motels of Shawano, LLC, Case No. 09-10881. The cases were jointly administered under the main caption of SIST, Case No. 09-10876.

hereto as Exhibit 1.  The dismissal was the result of the Court issuing a *sua sponte* order to show cause on or about September 15, 2009, in connection with the lift stay motion brought by Vermillion State Bank, as to why the cases should not be dismissed or why a Chapter 11 trustee should not be appointed.  Id.  In the First Dismissal Order, the Delaware Bankruptcy Court found, among other things, that "Debtors have, beyond cavil, abused the bankruptcy process . . . .  Debtors committed numerous offenses at odds with the requirements for maintaining a Chapter 11 case."  Id.

5.      On or about October 21, 2009, the Delaware debtors appealed the First Dismissal Order.  See SIST Docket, ECF Docket No. 294.[2]  The appeal apparently stayed a foreclosure sale scheduled by Vermillion State Bank for November 16, 2009.  See Fourth Midwest Oil Bankruptcy Case (as defined below), Case No. 11-30319 (Bankr. D. Mn.), Pedelty Declaration in Support of Motion of United States Trustee for Expedited Relief and Motion to Convert Chapter 11 Case ("Pedelty Declaration"), ECF Docket No. 14, at ¶8.  On May 25, 2010, the Delaware District Court affirmed the First Dismissal Order.  See SIST Docket, ECF Docket No. 316.  On May 28, 2010, the Delaware debtors appealed the District Court's order to the Third Circuit.[3]  Id., ECF Docket No. 318.

6.      On July 26, 2010, Minnesota Oil withdrew the appeal to the Third Circuit, and filed a Chapter 11 petition in the District of Minnesota (the "Second Midwest Oil Bankruptcy Case").  The Second Midwest Oil Bankruptcy Case was captioned In re Midwest Oil of Minnesota, LLC, Case No. 10-35450 (Bankr. D. Mn.).  Similar to the First Midwest Oil Bankruptcy Case, Naomi Isaacson signed the Second Midwest Oil Bankruptcy Case voluntary petition as the company's Chief Executive Officer, and the

---

[2]      The case number of that appeal is 09-cv-00789-GS.
[3]      The case number of that appeal is 10-2535.

debtor's Schedule A reflected that the debtor owned the same Minnesota Properties listed in the First Midwest Oil Bankruptcy Case.  <u>See</u> Second Midwest Oil Bankruptcy Case, Schedule A, ECF Docket No. 5.  The Second Midwest Oil Bankruptcy Case stayed foreclosure sales scheduled by Vermillion State Bank and American Bank, two of the debtor's secured creditors.  <u>See</u> Pedelty Declaration at ¶¶10-11.

7.  On or about August 12, 2010, the United States Trustee filed a motion to convert the Second Midwest Oil Bankruptcy Case.  <u>See</u> Second Midwest Oil Bankruptcy Case, ECF Docket No. 7.  In the motion, the United States Trustee for Region 8 asserted that cause existed to convert the Second Midwest Oil of Minnesota case because, among other reasons, the petition was filed in bad faith to avoid the effect of the First Dismissal Order.  <u>Id</u>.  The Minnesota Bankruptcy Court granted the United States Trustee's motion on August 18, 2010, finding on the record that the debtor acted in bad faith by filing the case.  <u>See</u> Second Midwest Oil Bankruptcy Case, ECF Docket No. 21 (the "<u>Second Dismissal Order</u>") and Transcript of Proceedings of August 18, 2010 at p. 19, lns. 8-22 ("Turning to the merits here, it seems to me that this case was filed in bad faith.  It's clearly an attempt to get around what happened in the Delaware court where this Debtor's case was dismissed before . . . .  I think it's been filed in bad faith and as a sort of manipulation of the system.").  A copy of the Second Dismissal Order and Transcript are attached hereto as <u>Exhibit 2</u>.

8.  On September 1, 2010, Midwest Oil filed another Chapter 11 petition in the Bankruptcy Court for the District of Delaware (the "<u>Third Midwest Oil Bankruptcy Case</u>").  The Third Midwest Oil Bankruptcy Case was captioned <u>In re Midwest Oil of Minnesota, LLC</u>, Case No. 10-12771 (Bankr. D. Del.).  Similar to the First and Second

Midwest Oil Bankruptcy Cases, Naomi Isaacson signed the Third Midwest Oil Bankruptcy Case voluntary petition as the company's managing member, and Darlene Sense, as the company's secretary, signed the Certificate of Resolution authorizing the filing.  See Third Midwest Oil Bankruptcy Case, ECF Docket No.1.  Consistent with the prior two bankruptcy cases, the debtor's Schedule A also reflected ownership by the debtor in the same Minnesota Properties that were listed in the First and Second Midwest Oil Bankruptcy Cases.  See Second Midwest Oil Bankruptcy Case, ECF Docket No. 7.

9.      On or about October 13, 2010, the United States Trustee for Region 3 filed a motion seeking the conversion or dismissal with prejudice for one year of the Third Midwest Oil Bankruptcy Case.  See Third Midwest Oil Bankruptcy Case, ECF Docket No. 33.  By Order dated on or about December 20, 2010, the Delaware Bankruptcy Court dismissed the Third Midwest Oil Bankruptcy Case, indicating, among other things, that "[t]he debtors have not demonstrated that their petitions were filed in accordance with the purposes of the Bankruptcy Code: *i.e.*, to preserve going concern value and maximize the value of the debtor's estate."  See Third Midwest Oil Bankruptcy Case, ECF Docket Nos. 115 and 116 (the "Third Dismissal Order").[4]  A copy of the Third Dismissal Order is attached hereto as Exhibit 3.

10.     On January 19, 2011, Midwest Oil filed the fourth Chapter 11 petition in less than two years (the "Fourth Midwest Oil Bankruptcy Case").  The Fourth Midwest Oil Bankruptcy Case was filed in the Minnesota Bankruptcy Court and was captioned In re Midwest Oil of Minnesota, LLC, Case No. 11-30319 (Bankr. D. Mn.).  As with the prior cases, Naomi Isaacson signed the Fourth Midwest Oil Bankruptcy Case voluntary

---

[4]      The Order also dismissed the case of Midwest Properties of Shawano, LLC, Case No. 10-12481 that had refiled for Chapter 11 bankruptcy relief following the First Dismissal Order.

petition as the company's managing member, and Darlene Sense, as the company's secretary, signed the Certificate of Resolution authorizing the filing. See Fourth Midwest Oil Bankruptcy Case, ECF Docket No.1. Moreover, Rebekah M. Nett signed the voluntary petition as the debtor's attorney. Id.

11.     On or about February 10, 2011, the United States Trustee for Region 8 filed a motion to convert or dismiss (with prejudice) the Fourth Midwest Oil Bankruptcy Case on an expedited basis. See Fourth Midwest Oil Bankruptcy Case, ECF Docket No.13. The motion to convert or dismiss alleged that the petition was filed in bad faith to avoid the effect of the three prior dismissals of the debtor's case and to hinder creditors' rights. Id. at ¶15. By order dated on or about March 9, 2011, the Minnesota Bankruptcy Court dismissed the Fourth Midwest Oil Bankruptcy Case on bad faith grounds, and imposed a one year bar from refiling (the "Fourth Dismissal Order"). See Fourth Midwest Oil Bankruptcy Case, ECF Docket No. 46 ("The debtor is barred from filing another case under the Bankruptcy Code for a period of one year from the date of this order"). A copy of the Fourth Dismissal Order is attached hereto as Exhibit 4.

12.     Following the First Dismissal Order, SIST (the Debtor's parent) re-filed for Chapter 11 bankruptcy relief in the Bankruptcy Court for the District of Delaware on or about February 21, 2011.[5] The case is still pending. The related cases of USA&O and Midwest Properties of Shawano, LLC are also pending in the Bankruptcy Court for the District of Delaware[6], and these two debtors recently filed a motion seeking their consolidation of the related cases with the SIST bankruptcy case.

---

[5]     The Chapter 11 case number is 11-10504-KJC.
[6]     The case numbers are as follows: USA&O, Case No. 10-14121and Midwest Properties of Shawano, LLC, case No. 11-10407.

*The Debtors' Present Case*

13.     In this Court, Yehud-Monosson USA, Inc. (the "Debtor") filed for bankruptcy on March 23, 2011 (the "Petition Date") in this Court.  The voluntary petition was signed by Naomi Isaacson as the Debtor's president, and Rebekah M. Nett as Debtor's counsel.  See ECF Docket. No. 1.  Similar to the prior bankruptcy cases of Midwest Oil, Darlene Sense, in her capacity as the Debtor's Secretary, signed the Debtor's certificate of resolution authorizing the Debtor's bankruptcy filing.  Id.  The petition was accompanied by a Statement of Corporate Ownership, reflecting that SIST is the Debtor's parent company, owning 100 percent of the Debtor's shares.  Id.

14.     In support of the bankruptcy petition, Ms. Isaacson filed an Affidavit, pursuant to Local Bankruptcy Rule 1007 (the "First Day Affidavit").  Id.  The First Day Affidavit reflects that the Debtor is in the business primarily of owning and operating convenience store properties.  Id. at ¶2.  The Debtor's assets are listed as consisting of the Minnesota Properties and office equipment.  Id. at ¶7.  No further pleadings have been filed to date in the Debtor's bankruptcy case, with the exception of a *pro hac vice* application of Ms. Nett and the instant Motion.

15.     The Debtor's First Day Affidavit lists the Debtor's largest unsecured creditors as consisting of nine entities located either in Minnesota (seven of them), Wisconsin (one of them), or Pennsylvania (one of them).  Id. at ¶5.  The five largest secured creditors are listed as mortgagees of the Minnesota Properties, all located in either Minnesota (five of them) or Texas (one of them).  Id. at ¶6.  Moreover, the list of secured creditors reflects that Vermillion State Bank holds a mortgage against the real property at 3355 Hadley Ave N., Oakdale, Minnesota.  Id. at ¶6.  Moreover, the Debtor

acknowledges in the First Day Affidavit that "[a] sheriff sale by advertisement is pending with respect to the property located at 3355 Hadley Avenue, Oakdale, MN 55128." <u>Id</u>. at ¶12.

16.     The Debtor currently is operating its business and managing its affairs pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

17.     No trustee or examiner has been appointed in this case.

18.     As of the date hereof, the United States Trustee is in the process of soliciting creditors for the purpose of forming an Official Committee of Unsecured Creditors.

*Formation of the Debtor*

19.     On the Petition Date, the Debtor's attorney sent the law firm of Stein & Moore a letter advising them of the Debtor's bankruptcy filing (the "<u>Debtor's Letter</u>"). <u>See</u> Letter of Rebekah M. Nett to Ralph Moore dated March 23, 2011, a copy of which is attached hereto as <u>Exhibit 5</u>.  The Debtor's Letter asserts that Midwest Oil was merged with the Debtor and, more specifically, provides:

> Please be advised that Midwest Oil of Minnesota, LLC and other entities have merged with Yehud-Monosson USA, Inc.  Yehud-Monosson USA, Inc. is now the owner of all of the merged entities' assets and liabilities, including those of Midwest Oil of Minnesota, LLC. . . . A sheriff's sale is pending on the property at issue in this matter that is currently scheduled for March 24, 2011.  Please be advised that the Sale cannot proceed and is stayed pursuant to 11 U.S.C. § 362 of the United States Bankruptcy Code.

20.     A review of the public records of the New York Department of State – Division of Corporation – indicates that the Debtor was recently incorporated in New York on or about December 1, 2010.  <u>See</u> Entity Information Fact Sheet from NYS

Department of State, attached hereto as Exhibit 6.

## ARGUMENT

21.     The United States Trustee files this Motion seeking entry of an order of

this Court either (a) transferring venue of the Chapter 11 case to the Minnesota

Bankruptcy Court or, in the alternative, (b) converting this case to Chapter 7 or

dismissing it with prejudice imposing a two-year bar on refiling.

**A.  The Court Should Transfer the Case Pursuant to Section 1412 of Title 28 to the Minnesota Bankruptcy Court in the Interests of Justice and For the Convenience of the Parties**

22. Section 1412 of Title 28 provides:

A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

28 U.S.C. § 1412.  Moreover, Federal Rule of Bankruptcy Procedure 1014(b), which

implements Section 1412, provides:

(a)(1) *Cases Filed in Proper District*.  If a petition is filed in the proper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States Trustee, and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.

Bankruptcy Rule 1014(a)(1).

23.     Section 1412 of Title 28 is worded in the disjunctive allowing a case to be

transferred under either the interest of justice rationale, or the convenience of the parties

rationale.  In re Dunmore Homes, 380 B.R. 663, 670 (Bankr. S.D.N.Y 2008) (citing

Enron Corp. v. Arora (In re Enron Corp.), 317 B.R. 629, 637 (Bankr. S.D.N.Y. 2004));

see also In re Asset Resolution LLC, 2009 WL 4505944, *2 (Bankr. S.D.N.Y. Nov. 24,

2009).  The decision to transfer venue is within the discretion of the court.  Dunmore

Homes, 380 B.R. at 670.  A court should base its analysis on the facts underlying each particular case.  Id. (citing Enron, 317 B.R. at 638); Gulf States Exploration Co. v. Manville Forest Prod. Corp. (In re Manville Forest Prod. Corp.), 896 F.2d 1384, 1391 (2d Cir. 1990) (review should be on individualized basis)).

24.     A debtor's selection of a proper venue is given "great weight" in the consideration of change of venue motions.  In re Enron Corp., 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002).  The party moving for change of venue has the burden of proof that must be carried by a preponderance of the evidence.  Id.; In re Asset Resolution LLC, 2009 WL 4505944, at *3.

*The Interests of Justice Factor*

25.     Courts evaluating the interests of justice have considered the following factors:

    i.     whether transfer would promote the economic and efficient administration of the bankruptcy estate;

    ii.    whether the interests of judicial economy would be served by the transfer;

    iii.   whether the parties would be able to receive a fair trial in each of the possible venues;

    iv.   whether either forum has an interest in having the controversy decided within its borders;

    v.    whether the enforceability of any judgment would be affected by the transfer; and

    vi.   whether the plaintiff's original choice of forum should be disturbed.

Enron, 317 B.R. at 638-39.

26.     Courts also consider the impact of the learning curve if the case is transferred.  Enron, 274 B.R. at 349.  In addition, courts consider the ability of the interested parties to participate in the proceedings and the additional costs that might be

incurred to do so.  <u>Dunmore Homes</u>, 380 B.R. at 672 (citing <u>In re B.L. of Miami</u>, 294
B.R. at 334).

27.     The facts underlying this case and the extensive history that the Minnesota
Bankruptcy Court has dealing with the Debtor – under the prior name of Midwest Oil –
demonstrate that the interests of justice favor transferring the case to the Minnesota
Bankruptcy Court.

*Judicial Economy/Efficient Administration of the Estates*

28.     There can be little doubt that the interests of judicial economy and the
efficient administration of this Chapter 11 case would be promoted if it was transferred to
the Bankruptcy Court for the District of Minnesota.  The factual background set forth
above clearly indicates that the present bankruptcy filing is part of an ongoing attempt to
prevent the foreclosure of some – if not all – of the Minnesota Properties.  Despite the
fact that the Debtor, under its current name, has not (upon information and belief) filed
for prior bankruptcy protection, it is clear that its related company, which subsequently
merged into the Debtor and which owned the same Minnesota Properties that the Debtor
claims as its main assets, has previously filed for bankruptcy relief four times.

29.     The Minnesota Bankruptcy Court is already well versed on the facts of the
case, as it previously was the forum for the Second and Fourth Midwest Oil Bankruptcy
Cases, and twice before, Bankruptcy Judge Robert J. Kressel has heard motions of the
United States Trustee for Region 8 for the dismissal or conversion of the prior
bankruptcy cases.  Thus, nearly two years of proceedings have transpired in the
Minnesota Bankruptcy Court dealing with the Debtor's related companies and officers.
These culminated in the entry of the Fourth Dismissal Order less than one month ago,

barring the prior entity from re-filing another case for a period of at least one year. These facts lead to the conclusion that both judicial economy and the efficient administration of this bankruptcy case would be fostered if the Debtor's present case was transferred to the Minnesota Bankruptcy Court – where the court is thoroughly familiar with the parties, and for years has been immersed in the panoply of issues and schemes that surround the Debtor's assets.

*Fair Trial*

30.    The Debtor makes no claim in the First Day Affidavit that it has filed its case in New York because it has been treated unfairly elsewhere. While Midwest Oil filed a motion to recuse Judge Kressel from the Fourth Midwest Oil Bankruptcy Case, see Fourth Midwest Oil Bankruptcy Case, ECF Docket No.24, the recusal motion was denied for lack of any plausible argument. Id., ECF Docket No. 45. Moreover, any possible argument that, the Debtor could not receive fair treatment in Minnesota would be undermined by the fact that after the Second Midwest Oil Bankruptcy Case was dismissed in August of 2010 by Judge Kressel, the Debtor promptly re-filed in the same court. These facts belie any possible claim that the Debtor would not receive fair treatment in Minnesota. Any argument advanced by the Debtor to the contrary would be nothing more than an attempt to further evade the fundamental purpose of the Bankruptcy Code, and try to reargue prior dismissal orders.

*Interest of the Forum*

31.    Given the history of the prior bankruptcy cases that Midwest Oil filed and, in particular, the Fourth Dismissal Order entered less than a month ago which barred Midwest Oil – the Debtor's predecessor – for refilling for bankruptcy relief for a year,

it appears that the Minnesota Bankruptcy Court would have the greatest interest in having the issues concerning the Minnesota Properties, which were listed as Midwest Oil's main assets and which were recently transferred to the Debtor, decided within its borders. The facts do not reveal any prior business connections to the Southern District of New York. There is no indication that this judicial district has a special interest in seeing this case administered here, nor can any such interest be gleaned in this alien real estate case.

*Enforceability of a Judgment*

32.     There are no known facts that suggest a transfer of the Debtor's case to the Bankruptcy Court for the District of Minnesota would create any issues as to the enforceability of a judgment.

*Choice of Forum*

33.     The law is well-settled that the Debtor's choice of forum should be given "great weight." Enron, supra, 274 B.R. at 342. However, the deference usually given to a debtor's choice of venue does not grant the debtor *carte blanche* to evade prior court orders or run afoul of fundamental bankruptcy rules and notions. The venue of the Debtor's cases in New York is not proper, as the First Day Affidavit reflects tenuous contacts at best with this district. Also, the factual history and chronology of the serial bankruptcy cases of the Debtor, Midwest Oil, SIST and related entities show that the sole purpose of filing this case in New York – with a different, newly-created corporate identity – is to evade the Fourth Dismissal Order entered in Minnesota, and attempt to once again stall a creditor's pending foreclosure proceedings.

34.     Because of the Debtor's limited contact with this judicial district, but has an extensive history and business and legal contacts with Minnesota, the facts weigh in favor of transferring this case to the Minnesota Bankruptcy Court.

35.     This Court has developed substantial precedent supporting the transfer of real estate cases like this one.  In <u>Dunmore Homes</u>, Judge Glenn applied the "interest of justice" test to a case where the debtor, a real estate developer, had established venue in the Southern District of New York by virtue of the creation of a newly-created New York corporation that resulted from the sale of the assets of a California corporation 59 days prior to the filing of Dunmore's Chapter 11 case.  <u>Dunmore Homes</u>, 380 B.R. at 667. Listing the issues the Court was likely to confront during the administration of the case, the Court noted post-petition financing, the potential purchase of assets or wind down of the company, and the location of the professionals and management personnel.  <u>Id</u>. at 672-73.  The Court, in concluding that "the efficient administration of this case weighs heavily in favor of transfer" of venue, cited <u>Enron</u>, where Judge Gonzalez observed that:

> where a debtor's assets consist solely of real property, cases have held that transfer of venue is proper because matters concerning real property have always been of local concern and traditionally are decided at the situs of the property.

<u>Id</u>. at 673.  <u>In re Enron</u>, 284 B.R. 376, 392 (Bankr. S.D.N.Y. 2002) (internal quotes omitted; abrogated on other grounds); <u>see</u> <u>also</u> <u>In re Old Delmar Corp.</u>, 45 B.R. 883, 884 (S.D.N.Y. 1985) (court located in judicial district of real property best equipped to handle problems and keep tabs on the property).

*The Convenience of the Parties Factors*

36.     In considering the "convenience of the parties," the six factors most commonly analyzed by the bankruptcy courts under Section 1412 of Title 28 are:

> i.      the proximity of creditors of every kind to the court;
> ii.     proximity of the debtor;
> iii.    proximity of witnesses necessary to the administration of the estate;
> iv.     location of the assets;
> v.      economic administration of the estate; and
> vi.     necessity of ancillary administration if liquidation should result.

Dunmore Homes, 380 B.R. at 676; In re Asset Resolution LLC, 2009 WL 4505944, at *3.  The most weight is given to the promotion of the economic and efficient administration of the estate.  Dunmore Homes, 380 B.R. at 676.

*Proximity of Creditors*

37.     While the Debtor has yet to file schedules, the First Day Affidavit filed on the Petition Date reflects that none of the top five secured creditors or the top twenty unsecured creditors are located in New York.  In fact, all creditors listed therein have addresses in either Minnesota, Wisconsin, Texas, or Pennsylvania.  See supra at ¶15.

*Proximity of the Debtor*

38.     Despite listing a New York address on the voluntary petition filed in this case, the facts support substantial contacts with Minnesota.  The only connection that appears to exist with New York is the fact that the Debtor – into which Midwest Oil was merged – recently incorporated in New York.  That connection, however, should be given little or no weight, in light of the history here.  Moreover, SIST, the Debtor's parent, appears to be incorporated in Wilmington, Delaware, the Debtor's properties are

all located in Minnesota, and, as set forth above, none of the creditors listed to date has connections to New York.

*Proximity of Witnesses*

39.     Naomi Isaacson, who signed the Debtor's voluntary petition in her capacity of Chief Executive Officer, resides in Minnesota.  See ECF Docket No. 1 (Creditor Matrix).   Moreover, the Debtor's counsel, who also signed the voluntary petition and filed a *pro hac vice* application with the Court, also resides in Minnesota.

*Location of the Assets*

40.     As set forth above, the Minnesota Properties are the only substantial assets, aside from some office equipment, listed in the First Day Affidavit, and they are all located in Minnesota.

*Economic Administration of the Estate*

41.     For the reasons set forth infra at ¶¶ 28 through 35, transferring the Debtor's bankruptcy case to the Bankruptcy Court for the District of Minnesota would promote the economic administration of the Debtors' bankruptcy estate.

*Necessity of Ancillary Administration for Liquidation*

42.     At this time, it is not possible to determine whether there will be a need for ancillary administration if the Debtor's liquidate.

**B.      In the Alternative, To the Extent this Court Is Not Inclined to Transfer Venue to Minnesota, the Case Should Be Converted or Dismissed with Prejudice**

43.      This case was filed in bad faith, and accordingly should be converted or dismissed with prejudice.  To the extent that the Court is not inclined to transfer venue of the Debtor's case to the Minnesota Bankruptcy Court, the United States Trustee moves for conversion to Chapter 7 or, in the alternative, dismissal with prejudice for two years.

44.      Lack of good faith in filing a Chapter 11 case also constitutes cause to convert or dismiss a case under section 1112(b) of the Bankruptcy Code.  See In re Strawbridge, 2010 WL 779267, at *1 (citing In re Loco Realty Corp., 2009 WL 2883050, at *2); see also In re 698 Flushing Realty Corp., 335 B.R. 17, 20-21 (Bankr. E.D.N.Y. 2005) (citing C-TC 9th Ave. P'ship, 113 F.3d 1304, 1311 (2d Cir. 1997)).  A bad faith filing is one where the "totality of the circumstances" indicate that reorganization is not the "proper course of action in a particular case."  In re Fraternal Composite Serv., Inc., 315 B.R. 247, 249 (Bankr. N.D.N.Y. 2003); see also In re Syndicom Corp., 268 B.R. 26, 49 (Bankr. S.D.N.Y. 2001) (noting that a bad faith case is one "that does not fit within the intended scope of chapter 11 relief as that chapter [was] intended by Congress.").

45.      A determination as to the good faith of a bankruptcy filing requires an inquiry into any possible abuses of the provisions, purposes, or spirit of bankruptcy law and into whether the debtor genuinely needs the liberal protections afforded by the Bankruptcy Code.  See Setzer v. Hot Prods, Inc. (In re Setzer), 47 B.R. 340 (Bankr. E.D.N.Y. 1985); see also In re Loco Realty Corp., 2009 WL 2883050, at *2 (noting that good faith "is required to prevent fraud or abuse of the bankruptcy process.").  While multiple factors are considered in determining whether a bankruptcy filing was in good

faith, one of the factors is whether the timing of the filing evidences an intent to frustrate and delay the efforts of the debtor's secured creditors to enforce their respective rights. See In re Strawbridge, 2010 WL 779267, at *2; see also In re AMC Realty Corp., 270 B.R. 132, 141 (Bankr. S.D.N.Y. 2001) ("Another factor frequently considered has been whether the case sought to be dismissed is a repeat filing, and, if so, the circumstances surrounding the filing").  Moreover, "the critical test of a debtor's bad faith remains whether on the filing date there was no reasonable likelihood that the debtor intended to reorganize and whether there is no reasonable possibility that the debtor will emerge from bankruptcy."  In re Loco Realty Corp., 2009 WL 2883050, at *3 (quoting In re 68 W. 127 St., LLC, 285 B.R. 838 (Bankr. S.D.N.Y. 2002)).

46.     As set forth above, in the instant case, Midwest Oil, the predecessor to the Debtor, had its case previously dismissed four times, the last time as recent as less than a month ago by the Minnesota Bankruptcy Court.  See ¶ 11, *infra*.  The Fourth Dismissal Order dismissed the Midwest Oil case with prejudice for a year.  See id.  Such a bar had not been imposed in the prior three dismissal orders.  As a result of the dismissal, and cognizant of the fact that it could not re-file under the name Midwest Oil, the company merged into a newly formed entity – the Debtor here – and transferred all its assets in the current Debtor.  Such actions constitute a transparent run around the Fourth Dismissal Order, which should be deterred and not tolerated any further.

47.     The Debtor's filing and disregard for the one year prohibition on re-filing dictates that this case was filed in bad faith.  See In re Spectee Group, Inc., 185 B.R. 146, 156 (Bankr. S.D.N.Y. 1995) (serial filings are a badge of bad faith); In re Matter of 299 Jack-Hemp Assocs., 20 B.R. 412, 413-14 (Bankr. S.D.N.Y. 1982) (transfer of assets from

an entity that was ineligible for bankruptcy relief to a partnership solely to frustrate creditor dismissed for bad faith).

48.    In the event that the Court finds there is "cause" under 11 U.S.C. § 1112(b), it then must decide whether it is in the best interest of creditors to dismiss the case, or to convert it to Chapter 7.  In re Hampton Hotel Investors, 270 B.R. 346, 359 (Bankr. S.D.N.Y. 2001).  The United States Trustee recommends that the case be converted.  As this Court has recently held, "[w]here serial filings are an issue, conversion is in the best interests of the creditors."  In re Strawbridge, 2010 WL 779267, at *2 (citing In re Staff Inv. Co., 146 B.R. 256, 259-60 (Bankr. E.D. Cal. 1992)).  As demonstrated by the prior four filings in less than two years, it is highly likely that the Debtor will merely file a new bankruptcy petition if this case is dismissed without prejudice. Moreover, because some of the Minnesota Properties appear to have some equity, under Chapter 7 an independent trustee could examine the Debtor's estate, and properly value and liquidate its assets in order to produce some creditor recoveries.  An independent trustee could also examine the possibility of bringing various causes of action.

49.    Alternatively, should the Court determine that conversion of this case is not appropriate, this case should be dismissed with prejudice, imposing a bar on re-filing of two years.  The Court has authority under 11 U.S. C. § 105(a) to dismiss this case with prejudice, and prohibit the Debtor from re-filing a bankruptcy case.  Casse v. Key Bank Nat'l Ass'n (In re Casse), 198 F.3d 327, 336 (2nd Cir. 1999); see also In re Tornheim, 239 B.R. 677, 687 (Bankr. E.D.N.Y. 1999) (dismissing a case with prejudice to re-filing for two years where a debtor, inter alia, continually failed to comply with court orders).

**CONCLUSION**

**WHEREFORE,** the United States Trustee respectfully requests that this Court enter an order (i) transferring this Chapter 11 case to the Bankruptcy Court for the District of Minnesota or (ii) in the alternative, converting the case to Chapter 7 or dismissing it with prejudice with a two-year bar to re-filing, and (iii) granting such further relief as is just.

Dated: New York, New York
   April 5, 2011

Respectfully submitted,

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

By  */s/ Elisabetta G. Gasparini*
  Trial Attorney
  33 Whitehall Street, 21st Floor
  New York, New York 10004
Tel. No. (212) 510-0500
Fax No. (212) 668-2255