# EXHIBIT 1

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| DR. R.C. SAMANTA ROY INSTITUTE | ) | Case No. 09-10876(KG) |
| OF SCIENCE & TECHNOLOGY, INC., et al., | ) | (Jointly Administered) |
|  | ) |  |
| Debtors. | ) |  |
|  | ) | **Re Dkt No. 283** |

## ORDER OF DISMISSAL

These cases have been pending since March 16, 2009 ("the Petition Date") when the

Debtors[1] filed petitions for relief under Chapter 11 of the Bankruptcy Code. In the following

six months, nearly all of the Debtors' activities have been directed toward defending against

motions to lift the automatic stay which various secured lenders brought seeking leave to

prosecute state law foreclosure proceedings. The Court does not doubt that Debtors

expended considerable resources and time in defending those motions, but that does not

excuse the complete lack of progress of these cases. In fact, had Debtors made efforts to

develop a business plan without which they have been unable to finance their cases, they may

have forestalled some or all of the lift stay motions. Instead, Debtors fought their secured

lenders with both sides expending considerable resources.

During the course of an evidentiary hearing on the lift stay motion of Vermillion Bank

on September 14-15, 2009, the Court heard testimony that despite their precarious cash flow

---

[1] The Debtors in these jointly administered cases are: Midwest Hotels & Motels of Shawano, LLC, Midwest Properties of Shawano, LLC, Midwest Oil of Shawano, LLC, Midwest Oil of Minnesota, LLC, Midwest Oil of Wisconsin, LLC, U.S. Acquisitions & Oil, Inc., Samanta Roy Institute of Science & Technology.

status, Debtors had not responded to a party interested in purchasing valuable real property which was vacant and therefore a financial drain rather than an income producing asset. This testimony, combined with the Debtors' continuing operational losses, led the Court on September 15, 2009, to issue *sua sponte* an Order to Show Cause (the "Show Cause Order") why the Court should not dismiss the cases or appoint a Chapter 11 trustee. D.I. 283.

The Court conducted an evidentiary hearing on the Show Cause Order on September 21, 2009. As the result of that hearing, the Court has concluded that dismissal is mandatory.

Bankruptcy Code Sections 1112(b)(1)-(4) provide that absent unusual circumstances, "the court **shall**. . . dismiss a case under [chapter 11] (emphasis supplied)" for cause, which includes:

> (4A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
> (4B) gross mismanagement of the estate;
>
> \* \* \*
>
> (4I) failure. . .to file tax returns due after the date of the order for relief. . . .

The testimony at the show cause hearing established that:

(a) Debtors have not filed tax returns since 2004, including the return for 2008 which was due after the Petition Date.

(b) Debtors Monthly Operating Reports reveal that they are suffering continuing losses. Despite those losses, they do not have a business plan and therefore were unable at

2

the hearing to meet their burden of proving a reasonable likelihood of rehabilitation.

(c)     Debtors belatedly responded to the interested purchaser but only in the face of the Show Cause Order. The Court is left to its concern about other lost or delayed opportunities and, moreover, to Debtors inattention to actions it could or should be taking to market its assets.

(d )    Six months into the cases, Debtors have been unable to obtain necessary financing without a business plan. The Debtors recently (August 18, 2009) hired a financial advisor to develop a business plan (D.I. 235),[2] but moved to retain the financial advisor only recently and after six months of inaction during which time their businesses continued to falter and only when Debtors' first extension of exclusivity is about to expire and a request for a further extension is pending. During those six months, Debtors forced creditors to serve unwillingly as their lenders.

(e)     Also, at the hearing Debtors' CEO testified that Debtors were holding in a gas station safe nearly $60,000 in cash from other businessoperations. Debtors did not advise creditors, the Court or the Office of the United States Trustee where or the manner in which they were holding the funds. Such "cash management" constitutes not only gross mismanagement but, as well, a lack of candor.

A leading case in the Third Circuit on the issue of dismissal is *In re SGL Carbon*

---

[2] The proposed advisor, NachmanHaysBrownstein, Inc. is an outstanding firm with which Debtors began discussions in April 2009. Debtors' failure to act with urgency in the face of its dire financial condition is more evidence of gross mismanagement and disregard for its creditors.

3

*Corporation*, 200 F.3d 153 (3rd. Cir. 1999). The court of appeals dismissed a case which it found debtors had filed solely to gain a tactical advantage in pending litigation. The Third Circuit held that dismissal "is committed to the sound discretion of the bankruptcy...court," (*Id*. at 159). Courts must prevent abuse of the bankruptcy process to "protect the integrity of the bankruptcy system and the rights of all involved in such proceedings." *Id*. at 169. Debtors have, beyond cavil, abused the bankruptcy process.

It is the multiplicity of factors which compels the Court's decision. Alone, the continuing losses might not be enough to warrant dismissal, but when joined with the absence of a plan to rehabilitate and lengthy inaction in obtaining financing or bringing efforts to the Court for maximizing the value of their assets for the benefit of creditors, dismissal is necessary. Similarly, it is not the mismanagement of the $60,000 cash which by itself compels dismissal but the nondisclosure compounding the act which translates into malfeasance. Debtors committed numerous offenses at odds with the requirements for maintaining a Chapter 11 case.

All parties at the hearing on the Show Cause Order agreed that a chapter 11 trustee is not a viable alternative to dismissal, particularly because Debtors do not have any paid employees. The Court is also concerned that a trustee would not receive the necessary cooperation from the Debtors given their actions and inactions in these cases. The Court therefore finds that Section 1112 of the Code mandates the dismissal of these cases and that the dismissal is in the best interests of Debtors' creditors who will now be able to proceed to

4

protect their interests without the restrictions of the automatic stay.

For the foregoing reasons, it is HEREBY ORDERED this 22nd day of September, 2009, that these jointly administered cases, and each of them, be DISMISSED.

KEVIN GROSS, U.S.B.J.

# EXHIBIT 2

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

**Midwest Oil of Minnesota, LLC,**                    BK 10-35450

**Debtor.**                                           **Chapter 11**

---

### ORDER DISMISSING CASE

---

The United States Trustee's motion for expedited relief and to convert this case is before the court.

Based on the motion and the file,

**IT IS ORDERED**:

1.     Expedited relief is granted.

2.     This case is dismissed pursuant to 11 U.S.C. § 1112(b)(1).

Dated: <u>August 18, 2010</u>

/e/ Robert J. Kressel
United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on 08/18/2010
Lori Vosejpka, Clerk, by LMH

UNITED STATES BANKRUPTCY COURT

DISTRICT OF MINNESOTA

------------------------------------------------

In Re:

      Midwest Oil of Minnesota, LLC,

                  File No. 10-35450

------------------------------------------------


BEFORE THE HONORABLE

ROBERT J. KRESSEL

United States Bankruptcy Judge


\*   \*   \*

TRANSCRIPT OF PROCEEDINGS

August 18, 2010

\*   \*   \*


Proceedings recorded by electronic sound
recording, transcript prepared by transcription
service.


NEIL K. JOHNSON REPORTING AGENCY
Six West 5th Street, Suite 700
Saint Paul, Minnesota 55102
Leslie R. Pingley

APPEARANCES

MR. COLIN D. KREUZIGER, Attorney at Law, 300 South Fourth Street, Suite 1015, Minneapolis, Minnesota 55415 appeared on behalf of the United States Trustee.

MR. MICHAEL S. DOVE, Attorney at Law, 2700 South Broadway, New Ulm, Minnesota 56073 appeared on behalf of American Bank.

MR. MICHAEL J. IANNACONE, Attorney at Law, 8687 Eagle Point Boulevard, Lake Elmo, Minnesota 55042 appeared on behalf of Vermillion State Bank.

MR. JOHN E. BRANDT, Attorney at Law, 30 East Seventh Street, Suite 3200, Saint Paul, Minnesota 55101 appeared on behalf of Eagan Oil Company.

1                    <u>APPEARANCES (CONT'D)</u>

2

3

4            MR. BRUCE E. SCOTT, Attorney at Law,

5    204 Main Street, New Prague Minnesota 56071

6    appeared on behalf of the Debtor.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        P R O C E E D I N G S

2

3          (Wherein, the following recorded

4     proceedings were had)

5

6          THE COURT: Up next is a motion by

7     the United States Trustee to dismiss the case

8     filed by Midwest Oil of Minnesota.

9       Can I get the appearances please?

10         MR. KREUZIGER:  Good morning,

11    Your Honor.  Colin Kreuziger on behalf of the

12    United States Trustee.

13         MR. DOVE:  Michael Dove, Your

14    Honor, on behalf of American Bank of Saint

15    Paul.

16         MR. IANNACONE:  Michael Iannacone

17    on behalf of Vermillion State Bank.

18         MR. BRANDT:  John Brandt on

19    behalf of Eagan Oil.

20         MR. SCOTT:  Bruce Scott on behalf

21    of the Debtor.

22         THE COURT:  Mr. Kreuziger.

23         MR. KREUZIGER:  Thank you, Your

24    Honor.  I'll keep this relatively brief as I

25    believe the record that's been made already

1     in the case largely speaks for itself.

2       As a threshold matter I believe that the

3     Debtor is proceeding without counsel this

4     morning.

5       The Debtors own reply brief in this case

6     has admitted that Mr. Scott is not

7     disinterested and therefore he can't qualify

8     for employment under Section 327, that

9     effectively makes the Debtor in a position

10     where they are proceeding pro se and the

11     Local Rules obviously do not permit that, so

12     I believe the case should be converted on

13     that basis alone.

14       Secondly, I also believe that there's

15     cause to have the case converted.  The

16     history of the proceedings both here as well

17     as in Delaware as well as some of the

18     Debtor's other activities in other forms

19     indicate a pattern of delay, evasion.

20       As we have outlined in the United States

21     Trustee's motion there's quite a number of

22     things.  I will just attempt to hit some of

23     the most pertinent points.

24       First of all, this filing appears to be

25     simply an attempt to evade the effect of the

1    Delaware Bankruptcy Court's order dismissing
2    the case.
3        Back in September of 2009 as it was noted
4    in one of the responses, that bankruptcy
5    filing was apparently filed in an attempt to
6    forestall a foreclosure sale and it appears
7    that this filing may have been filed under
8    the same circumstances.
9        As we noted in our motion, the Debtor had
10   filed an appeal of the dismissal order in the
11   Delaware case only to withdraw it on the same
12   day that this case was filed.
13       As we also noted, actually at the time of
14   the filing of the U.S. Trustee's motion there
15   had been no employment application filed and
16   that's similar to what happened in the
17   previous case, the (Unintelligible) Dental
18   Clinic case which was also referenced in the
19   U.S. Trustee's motion and the employment
20   application was not filed until after the
21   U.S. Trustee made its motion to convert the
22   case.
23       As we also noted in our motion, there's
24   been no cash collateral motion.  The Debtor
25   appears to acknowledge that there are cash

collateral issues in this case and seems to
acknowledge that it's collecting rents on at
least one of the properties, but has not
explicitly sought any authority to use those
rents.

THE COURT: Well, it says that
it's gotten permission from the secured
creditor to use its cash collateral.

MR. KREUZIGER: Yes, Your Honor,
I believe that's correct with respect to one
of the properties.

I think that with respect to one of the
other properties the -- at least the way I
read the response was that the Debtor
continues to collect rent but is actually
not -- is allegedly not using the rents for
any purpose and has therefore not sought
permission to use them.

As I mentioned in the motion, Mr. Scott
has failed to disclose the fact that he
guaranteed a debt of Midwest Oil. He's not
disclosed that in either this case or related
Wisconsin case.

As was also mentioned in the motion, the
Debtor's history in a State Court proceeding

1  indicates that this is essentially standard

2  practice for this Debtor.  There's -- there's

3  gamesmanship, there's delay and I believe

4  that's been evidence in this case as well as

5  in the prior cases that were mentioned in our

6  motion.

7      Overall then, Your Honor, I believe the

8  record is sufficient to support a finding of

9  bad faith in this case and as a result

10  convert the case to Chapter 7.

11          THE COURT: Do you want to address

12  the expedited nature of the motion?

13          MR. KREUZIGER:  Yes, Your Honor,

14  as I have described and I believe the case

15  was filed in bad faith and therefore it's

16  imperative that the Court address the matter

17  on an expedited basis.

18      In addition, I don't believe that the

19  Debtor would be prejudiced in this matter.

20  The shear volume of the response in this

21  case, I think, indicates the fact that they

22  have had a fair and full chance to respond to

23  the United States Trustees's motion and I

24  would request that the Court grant the

25  request for an expedited hiring.

1            THE COURT: All right.  Mr. Scott.

2            MR. SCOTT:  Thank you, Your

3      Honor.

4         First of all, I don't quite understand why

5      we are here today and should now be in here

6      on an emergency basis and I would probably

7      not have been in the Court again because I

8      was hired to file the schedules, et cetera.

9         My client, I believe, has the intention to

10     hire another attorney to move forward with

11     the case if that's what's -- where we go.

12        There was a lot of presumptions and

13     assumptions in the Trustee's allegations,

14     talking about no reorganizational affect and

15     I want to try and address the

16     reorganizational affect because I think

17     that's a key that this case was not filed in

18     bad faith.  It was filed in good faith and

19     the reorganizational efforts are the key to

20     that.

21        First of all, in Delaware that plan was

22     dismissed before -- I mean that filing was

23     dismissed before my client actually had an

24     opportunity to even present a plan.  The case

25     was dismissed.  A plan was not even due yet.

1      A lot of the allegations in the Delaware

2    case did not affect my client, Midwest Oil of

3    Minnesota.

4      Then, of course, the Delaware order

5    dismissed that case with no showing of bad

6    faith.

7          THE COURT: Wasn't your remedy

8    then to appeal that and pursue those appeals

9    rather than come here and basically say -- I

10    mean you said several times in your response

11    the order was just wrong.  It seems to me the

12    remedy for that is to seek redress on appeal.

13          MR. SCOTT:  We did appeal there,

14    but that was such a conglomerate with all the

15    entities involved that we feel better

16    presenting this case on its own merits, the

17    Midwest Oil Company, and presenting it here

18    where the properties are, et cetera.

19      In that case there, the Midwest Oil

20    Minnesota, had really no significant role in

21    the Delaware case.  It was a minority part of

22    that case.

23      The Trustee for -- talks about the

24    restructuring problems or mentions the entity

25    changes and they were just a restructuring

1     that was long before the bankruptcy was

2     filed, but we were a Wisconsin entity and

3     they moved their entity to Delaware and then

4     the entity as such never ceased to exist.  It

5     was always there as an entity.

6         To talk about bad faith a little bit, the

7     totals in the law -- the total circumstances

8     should be viewed and this client, this entity

9     has never been able -- been offered the

10    opportunity to prepare a feasible plan or

11    reorganization plan and they have -- they had

12    worked hard on that in the group cases out

13    there in Delaware, and so they are hoping now

14    that they will be able to put forth a plan

15    and have full confidence that they can put

16    forth a plan.

17        Their -- there are three basic locations

18    in this entity in Minnesota and one of them

19    is (Unintelligible) and even out of

20    bankruptcy that entity has been able to turn

21    the cash flow around there.

22        The Trustee talks about taxes, but that

23    particular operation has brought all -- as I

24    understand it, in fact, has brought all the

25    taxes current owed to the City of ST Fall

1       [sic] and so they had made head ways.  They

2       are having positive cash flow.  They are

3       paying the lender on that particular loan and

4       when we allude to the money, the cash

5       collateral, of course, that's where we are in

6       agreement with that letter to pay their

7       mortgage, pay their P&I, their principal and

8       interest, pay the taxes and pay the insurance

9       and since that agreement was drawn, we have

10      brought the -- all those items current at

11      least in the present agreement, so this

12      lender -- this Debtor is looking forward to

13      being able to put forth a plan on the other

14      two locations and has the complete faith that

15      they can do that.

16          The Trustee also brings out the point that

17      to convert this to a 7 -- this entity is a

18      non-business under 11 USC, 1112 C, and we

19      would cite the case law in our brief.  I

20      don't know if you've had time to read that.

21      Maybe you have.  Maybe you haven't.  I know

22      everything was rushed.

23          We put considerable time in to get that to

24      you, but we have quoted along there or cited

25      along there that that conversion to a

1  Chapter 7 is not appropriate.

2  THE COURT: Well, he's saying he

3  does make money. What you're claiming is the

4  parent?

5  MR. SCOTT: Yes, it does make

6  money and what -- according to some cited law

7  that still is considered a non-profit,

8  especially on rents.

9  So I have kind of hit the highlights there

10  on cash, collateral and evidence, so we --

11  and the different items, so we would

12  respectfully request that this Debtor would

13  have a chance at least to file forth a plan

14  and to continue with their bankruptcy. If

15  not, I think in our brief we all -- in our

16  brief, I don't think, I know we also asked if

17  they thought they could be prejudiced --

18  without prejudice in this area or this Court

19  and they could be removed back to Delaware.

20  So we respectfully request that the

21  request for conversion be denied and the

22  request for dismissal or conversion be denied

23  and that we have a chance to move forward in

24  this matter.

25  THE COURT: Mr. Dove.

1    　　　　MR. DOVE:  Thank you, Your Honor.

2    　　American Bank of Saint Paul sees this as a

3    mere serial filing.  I don't believe it is

4    mere coincidence that the appeal was

5    dismissed on the same day there was another

6    action filed in the State of Minnesota.

7    　　Also, we do not consent to the use of cash

8    collateral to the extent that there is any

9    monies being generated off the property that

10   we have a mortgage on down in Albert Lea.  We

11   don't know that.  Responsive pleading by

12   Midwest Oil says the other property

13   generating rental income at this time -- we

14   don't know if that's our property or not.  We

15   do have an affidavit of vacancy when we

16   served the foreclosure notice on the

17   property.  The sheriff put forth that

18   vacancy, so we don't believe there's anything

19   being generated, but to the extent there is,

20   we oppose it.

21   　　We believe that a cause does exist, both

22   on an expedited basis and as set forth in the

23   U.S. Trustee's motion to convert this case to

24   a Chapter 7 case, to follow-up and trace the

25   various items that were disclosed and

1 addressed and we support the U.S. Trustee's

2 motion.

3     THE COURT: Mr. Iannacone.

4     MR. IANNACONE:  Thank you, Your

5 Honor.  Vermillion Bank supports the United

6 States Trustee's motion to convert the case.

7  The dismissal in the Delaware case was

8 brought in response to Vermillion State

9 Bank's motion for relief from the automatic

10 stay in the Delaware case.  Rather than grant

11 the relief from stay the case was dismissed

12 and that appeal filed.  This case was filed

13 on the eve of the foreclosure sale in

14 Minnesota.

15  In addition, as I have laid out in my

16 response and we're prepared to present

17 testimony, that if an employee -- Midwest Oil

18 made an initial suspicious cash deposit into

19 an attorney's trust account in Vermillion

20 State Bank and was followed by two other

21 deposits of large amounts of money.  The

22 total was over $200,000.00.

23  The cash was used to pay real estate taxes

24 for an afilliate in Wisconsin.  It was also

25 used to pay lawyers in the Delaware and an

1   appraiser in the Delaware case.  No bank
2   account statements have been filed in this
3   case.  We don't know what the Debtor is doing
4   with their money.  They acknowledge holding
5   cash.  They claim the cash belongs to
6   somebody else.
7       This is nothing more than a serial filing.
8   What they did is they were all grouped
9   together in Delaware. They realized that was
10  a mistake because they were -- the creditors
11  could just focus in on one court because they
12  were consolidated.  Now, they have scattered
13  to the four winds.
14      They sought the relief of this court and
15  bankruptcy is a debtor's remedy and a
16  creditor's remedy and on behalf of the -- the
17  creditors have been unanimous in this case.
18  This debtor should be converted and the
19  shenanigans should end.
20          THE COURT: Mr. Brandt.
21          MR. BRANDT:  Your Honor, Eagan
22  Oil Company is an Exxon Mobile distributor
23  and sells gasoline to the location at 236
24  Grant.
25      Relative to that particular property, the

1     Debtor is -- it is correct that the Debtor

2     has been attempting to keep the taxes

3     current, has been making mortgage payments

4     and has been insuring that property pursuant

5     to the terms of the first and second

6     mortgage.

7        What I am concerned about in this case,

8     whether the Court decides to convert -- if

9     the Court decides to convert this case or

10    continue the Chapter 11, that this Court

11    retain jurisdiction rather than referring the

12    matter back to Delaware.  That has been an

13    absolute mess for the Minnesota creditors.

14       All the assets of this particular debtor

15    are in Minnesota.  The creditors are in --

16    are Minnesota creditors and if the case is

17    not dismissed, then as I indicate, we request

18    that this Court retain jurisdiction as

19    opposed to the Debtor's request that in the

20    alternative that the matter be transferred to

21    Delaware.

22       Mr. Krueziger.

23         MR. KREUZIGER:  Just briefly,

24    Your Honor, I want to comment on the tax

25    situation.

1          It's my understanding that the income

2     taxes are certainly far from current.

3     There's an ongoing dispute with the IRS about

4     that issue and I don't believe it's been

5     resolved.

6          I also wanted to comment briefly on the

7     argument under 1112C.  I would agree with the

8     Court's comments that the -- this Debtor is a

9     money corporation.  It's incorporated as a

10    corporation in Delaware and the parent is

11    incorporated as a non-profit corporation in

12    Delaware, so I don't believe 1112C applies

13    and the case can be converted.

14         Thank you.

15              THE COURT: First, before I -- I

16    feel I would be remiss if I didn't comment on

17    the pleadings that you filed, Mr. Scott,

18    which in my time on the bench are among the

19    worst and most scurrlious, defamatory

20    pleadings I have ever seen from a lawyer.

21    It's the kind of thing I occasionally see

22    from pro se people, but the stuff that you

23    wrote is unprofessional in the extreme and

24    just down right rude and inappropriate and

25    somewhere along the line maybe you heard or

thought that this was effective advocacy,
but I can assure you that it is exactly the
opposite.

    You are not helping your clients with that
kind of nonsense and trash that you have felt
like you have filed in this case and I hope
you refrain in the future from repeating it.

        Turning to the merits here, it seems to me
that this case was filed in bad faith.  It's
clearly an attempt to get around what
happened in the Delaware court where this
Debtor's case was dismissed before and the
Debtor has reasons -- this Debtor has reasons
that it gives for that which it argues made
that order a mistake, but it seems to me the
remedy for a mistake made by a court is to go
back to that court and ask for relief from
that order or in the alternative appeal as
the Debtor did here unsuccessfully once and
then abandoned it.

    I think it's been filed in bad faith and
as a sort of manipulation of the system.

    But I disagree with the recommendation
that the case be converted.  It seems to me
it's not in the best interest of creditors to

1   convert the case which would leave the

2   automatic stay in effect and create problems

3   with that.  It would create a mess in the

4   operation of the businesses as a Chapter 7

5   Trustee tried to take them over, so it seems

6   to me the best interest of creditors are

7   served by dismissing this case, so I will

8   grant the U.S. Trustee's motion and dismiss

9   the case.

10      If you would submit an order along those

11  lines, Mr. Kreuziger, I will sign it.  Thank

12  you.

13

14

15                  *   *   *

16

17

18

19

20

21

22

23

24

25

1  STATE OF MINNESOTA        )
                             )  ss.
2  COUNTY OF DAKOTA          )

3

4            BE IT KNOWN, that I transcribed the

5  tape-recorded proceedings held at the time and

6  place set forth herein above;

7

8            That the proceedings were recorded

9  electronically and stenographically transcribed

10 into typewriting, that the transcript is a true

11 record of the proceedings, to the best of my

12 ability;

13

14           That I am not related to any of the

15 parties hereto nor interested in the outcome of

16 the action;

17

18           WITNESS MY HAND AND SEAL:

19

20

21                        S/ LESLIE PINGLEY

22           ------------------------------

23                        Leslie Pingley

24                        Notary Public

25